Gkeen, J.
delivered the opinion of the court.
The original bill in this case alledges, that the complainants had sold M. J. Turbeville a parcel of goods on condition that he would give a note for the price with one T. B. Matthews as endorser, and that, relying on his performance of this condition, they had delivered to him the goods, which in a few days afterwards he conveyed in trust for the security of the other defendants, who were his securities for the faithful administration of his father’s estate, and that he had wholly failed to obtain the endorsement of Matthews, or give them security for the price of the goods. They insist that they did not part with their title to the goods, until the condition of the sale was complied with, and this not having been done, they have a right to reclaim them, notwithstanding the deed of trust in favor of the other defendants.
The supplemental bill states, that the complainants had obtained a judgment at law against Turbeville, upon which a fi. fa. had issued, and had been levied on said goods, but that they had directed the sheriff not to sell until the matters could be heard in equity; that the deed of trust for the benefit of the other defendants was fraudulent and void, and prays a decree to set it aside, and that the property be sold for the benefit of the complainants.
Turbeville, in his answer, denies the contract for the goods to have been as the hill states it, or that there was any condition in the sale, and states that complainant, Saunders, suggested to him that Matthews would endorse his note, upon which suggestion, defendant promised to'procure the endorsement of Matthews, if in his power; that Matthews refused to’endorse for him, and that the goods were delivered without condition to him, and obtained without fraud on his part, and were conveyed, to the other defendants without fraud, to indemnify them for liabilities they were under for him.
The^ other defendants insist that the title to the goods was vested *278 absolutely in Turbeville, by the sale and delivery, and that the coii-veyance for their benefit was fair and bonafide.
George Thomas-, one of the clerks of Saunders & Martin, states that on the evening the goods were sold^ arid before they were invoiced, Mr. Saunders remarked1 to him, that said Turbeville had agreed to give T. B. Matthews-, of Robertson coünty, as endorser on the notes. Mr. Saunders told witness, he would not sell Turbe-ville goods without an endorser.
Wm. A. Walsh, another clerk in the complainants’ store, states, that on the evening that Turbeville laid by the goods, and before they were invoiced or delivered, he heard Mr. Saunders say that he considered it a first rate sale, as Turbeville had to give Thomas B, Matthews of Robertson county as security.
H. S. Kimble states, that J. W. Saunders, of the firm of Saunders & Martin, went to Springfield, where Turbeville lived, in a few days after Turbeville had received áñd opened the goods he had purchased of Saunders &. Martin, and after the goods had been conveyed to a trustee for the security of the other defendants; that Saunders and Turbeville went to.the office of the witness, where Saunders urged Turbeville to give him a deed of trust on the goods also. Turbeville refused, and Saunders adverted to many arguments to induce Turbeville to comply, 'and among others remarked, “you know, Mr. Turbeville, that when you bought oUr goods, you were to give Mr. Matthews as your endorser, and having failed to do so, I think you cannot object to doing any thing you can to secure our debt.” To the frequent repetition of these remarks, Turbeville would sometimes drop some short expression of indirect acknowledgement, and Sometimes he would remain silent, but refused,to give the deed of trust. Turbeville told Saunders that if he would wait a few days, he would still give him security. But Saunders insisted that his credit was gone, and that no o'fie would be his security. Saunders urged him to make an assignment of his books and accounts, which Turbeville had stated were worth four thousand dollars. Turbeville still insisted he Would give good security, but finally yielded, and made the assignment. Saunders Urged that the books and accounts from the slight examination he had given them would not be sufficient to secure him. Witness proposed that Turbeville should make a power of attorney to some person to confess a judgment in favor of Saunders & Martin at the next term of the circuit court, which would enable Mr. Saunders *279 to test the validity of the deed of trust. The parties agreed at once to this proposition, and the power of attorney was executed.
J. Green, states, that after complainants filed their bill, he had a convei’sation with Miles J. Turbeville, in which he stated to Tur-beville that he had heard that the purchase of the goods was made upon condition that he was to give Thomas B. Matthews as endorser foffthe purchase, which said Turbeville did not deny to have been the contract.
The goods were sold on the 7th of April, 1838, and on the 8th the complainants wrote a letter to Tui’beville at Springfield, enclosing two notes, one at nine months and the other at ten months, for the amount of the bill of goods, in which they state, “that agreeably to our understanding they are both made payable to T. B. Matthews, who will cheerfully endorse them, we have no doubt.”
In a postcript to the same letter, they offer to sell Turbeville hats,' and tell him to send an order for any he might want. The deposition of Miles J. Turbeville was taken in behalf of the other defendants, and states in substance, the facts as they are stated in hjs answer. The deed of trust is dated the 20th of April, 1838 and was registered on the 25th of the same month. The goods in controversy and other property, were conveyed to Spencer Turbe-ville in trust, to secure the other defendants as securities of said Miles J. Turbeville.
Upon these facts it is insisted, by the’complainants counsel, that the goods were sold to Turbeville upon a condition precedent, that he was to execute a note for the price, with Thomas B. Matthews as endorser, and that not having done so, the property in the goods did not pass, notwithstanding the delivery of them to him. From the .most careful scrutiny of the evidence in this cause, we are unable to arrive at the conclusion, that there was such condition precedent.
There is no admission by Turbeville that such a condition was made part of the contract. On the contrary he denies its existence in his answer, and also in his deposition. If the testimony of Thomas and Walsh be admissible as part of the res gestee, this evidence is only proof of the fact, that Saunders said Turbeville had agreed to give Matthews as endorser. Kimble and Green only prove statements in the presence of Turbeville that he was to give Matthews as security, which he did not deny.
*280 If the terms in which the statements are made, were to be taken as the terms of the contract, we cannot perceive that it contains a condition precedent, that the security was to be given before the title to the' goods- could vest in Turbeville; but when we take into view the letter of the complainants, referring to the endorsement of Matthews as a matter understood between the parties, which they had no doubt he would do, and urging additional purchases of goods, which dt was proposed to send to his order, it is apparent, that although it had been agreed, that a note with Matthews’ endorsement should be procured, if practicable, yet that the sale of the goods did not depend upon that as a condition.
The expression in the letter, that they had no doubt that Matthews would cheerfully endorse the notes, is indicative of their confidence in Turbeville, and their willingness to trust the procurement of Matthews’ endorsement by him. In the same letter too, they offer to extend further credit for additional goods, without mentioning the subject of security for them. Add to this, the goods were delivered to the carrier without requiring the security first to be given, or annexing any condition whatever thereto.
Mr. Saunders’ treatment of the case agrees with this view of the facts. Although Turbeville had been several weeks in the possession of the goods, no step is taken in relation to the claim, until he heard of the assignment to the defendants. ■ And then when he went to Springfield, although he alleged that the assignment was fraudulent, yet he set up no claim to the goods as his property. On the contrary he urged Turbeville to give him a deed of trust also on the goods, thereby acknowledging the title to them to be in him. When he failed to obtain a deed of trust on thegoods, he took notes due at their date, instead of nine and ten months afterwards, with a power of attorney to confess judgment on them, and as a security for this payment, he sought and obtained an assignment of Tur-beville’s books and accounts. After so many acts in relation to this subject, each predicated upon the supposition of Turbeville’s ownership of the goods, the right of the complainants to attach them as their property could not be countenanced, even if the proof in relation to the contract were much stronger than it is.
This view of the case is decisive also of the other ground upon which they insist they are entitled to the goods. If Turbeville were guilty of fraud in procuring the goods, the contract of sale would be void, and the complainants would have remained owners, *281 But no such allegation is made by Mr. Saunders at Springfield, nor does he claim any title to goods for such cause. Independent of this, we do not perceive any evidence in the record going to establish the charge of fraud upon Turbeville in the procurement of the goods. Upon the whole, therefore, we think the title to the goods did pass to the purchaser by the sale and delivery, and that the complainants trusted to the good faith of Turbeville, and the willingness with which they supposed Matthews would endorse the notes.
2. The next and only remaining question is, whether the deeds of trust are fraudulent, either upon their face, or for facts extrinsic thereof, proved in the cause. It is contended that the provision in the deed, that Miles J. Turbeville, with the trustee, was to continue to sell off the goods by retail, constitutes them fraudulent.
This proposition, it is true, gave Turbeville the joint possession of the goods, and thereby puf it in his power to waste them, or put the proceeds of the sales in his own pocket, and it may therefore have been, and, as it has turned out, doubtless, was an imprudent arrangement. But this stipulation is not inconsistent with the conveyance, as the Trustee was to remain in the joint possession of the goods, and as Turbeville’s possession was not for himself, but as the agent and servant of the parties for whose benefit the deed was ¿nade. If he were honest and trustworthy, this arrangement'would he manifestly for the benefit of all concerned. He was acquainted with the business and could manage it better than one who knew nothing about it. The sales, too, would be made at a higher price than would have been produced at auction. And as we are not to suppose in advance that a man will act dishonestly, we can perceive nothing in this arrangement indicative of a fraudulent intent in the parties to the deed.
As to the existence of facts extrinsic of the deed, that render it fraudulent, we do not perceive them. It is true, Turbeville used a small portion of the funds to pay a debt due from him to a third person, and it is probable, that in violation of his trust and of honesty, he abstracted a portion of the goods, and conveyed them to Mississippi. But there is no proof, nor ground to suspect that the other defendants knew of or consented to these acts, and if no fraud is to be inferred from the fact that he was constituted one of the agents to sell the goods, surely none can be imputed, because of his subsequent faithless conduct. -
*282 We think, therefore, that the hill must.be dismissed. But as the circumstances of the case furnished grounds, which well warranted this investigation, and as this proceeding has probably saved to the parties a considerable portion of the effects secured by the deed, the costs of the cause in this court will be paid out of the fund do controversy. Affirm the decree.